UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES P. WARD,
                            Plaintiff,

-v-

UNITED STATES OF AMERICA and
MIANKANZE BAMBA,
                            Defendant.

---

20-CV-5676 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

James P. Ward, a former employee of the United States Department of Homeland Security, brings suit against the United States and his former colleague, Miankanze Bamba, in his individual capacity. Ward asserts claims of malicious prosecution against both Defendants and a claim of false arrest against the Government, seeking damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 et seq. ("FTCA"). The Government moves to substitute itself for Bamba and then to dismiss Ward's claims based on lack of subject matter jurisdiction and on Ward's failure to state a claim upon which relief can be granted. For the reasons that follow, the Government's motion is granted.

I.  **Background**

The following facts, drawn from the operative complaint, are presumed true for purposes of this motion. (*See* Dkt. No. 1 ("Comp.").)

James P. Ward was previously employed as Risk Management Branch Chief/Law Enforcement Specialist for the Federal Protective Service ("FPS"), a component of DHS. (Comp. ¶¶ 11–12.) Ward was stationed at the FPS office in New York City. (Comp. ¶ 12.) In March 2018, Ward entered the office of a subordinate, Financial Analyst Miankanze Bamba, accompanied by another employee, Jason Martinez. (Comp. ¶¶ 14, 16.) At the time he entered

Bamba's office, Ward, who is right-handed, was wearing an agency-issued firearm holstered near the right rear pocket of his pants. (Comp. ¶ 23.) Ward's aim was to discuss Bamba's apparent refusal to assign funding for a particular project. (Comp. ¶ 14.) When Bamba insisted that he could not assign the funding, the exchange grew confrontational. (Comp. ¶¶ 17–19.) The confrontation reached its crescendo when Bamba began shouting that Ward was threatening him with a firearm, then called 911 to report this allegation. (Comp. ¶¶ 21, 24.) After Bamba hung up, Ward instructed him to leave the office to go meet police officers who would be responding to the 911 call. (Comp. ¶ 25.) Bamba did not heed Ward's instruction and tried to call 911 again, at which point Ward blocked Bamba's call by holding down the receiver button on Bamba's desk phone. (Comp. ¶¶ 25–26.) NYPD officers responding to Bamba's initial 911 call spoke with Bamba and Martinez, who had witnessed the entire confrontation. (Comp. ¶¶ 29–30.) Martinez informed the NYPD officers that Ward had not threatened Bamba and that the latter had a history of making false allegations against co-workers and supervisors; the officers left, stating that they considered the incident an internal federal government issue. (*Id.*)

Three weeks later, DHS launched an internal investigation, led by Special Agent Steven Familio, into the confrontation between its two employees. (Comp. ¶ 32.) Bamba alleged during the investigation that Ward had placed "his left hand on a gun at his left side," had "never [taken] his hand off his gun," had "pushed [Bamba] in the chair," had "spun [Bamba] around," and had "grabbed [Bamba's] phone." (Comp. ¶ 1, 22, 27.) Special Agent Familio concluded his investigation in August, recommending that DHS seek a New York warrant and grand jury indictment against Ward. (Comp. ¶ 33.) The warrant and indictment were obtained, and Ward was arrested that month. (Comp. ¶ 36.) Although two NYPD detectives took Ward into custody, Special Agent Familio was present, and is listed on the NYPD arrest report as the

arresting officer.  (Comp. ¶ 37.)  A few hours after the arrest, Special Agent Familio filed a misdemeanor information against Ward for violation of Sections 120.14(1), 120.15, and 145.00(4)(a) of the New York State Penal Code — Menacing in the Second Degree, Menacing in the Third Degree, and Criminal Mischief in the Fourth Degree, respectively.  (Comp. ¶ 42.)  A week later, Bamba filed a superseding information for violation of these same sections.  (Comp. ¶ 44.)  As a direct result of the information against him, Ward lost his security clearance and was placed on indefinite suspension by DHS.  (Comp. ¶ 49.)  In May 2019, nine months after his arrest, all charges against Ward were dismissed.  (Comp. ¶¶ 47–48.)

Ward alleges that Bamba "acted out of malice or otherwise unjustified motives" toward him when Bamba included "knowingly and intentionally" false accusations in the information he filed.  (Comp. ¶¶ 27, 45.)  Similarly, Ward alleges that Agent Familio "acted out of malice or otherwise unjustified motives" when he carried out an arrest without probable cause.  (Comp. ¶¶ 35, 38.)  Ward brings suit alleging: (1) false arrest against the Government for Special Agent Familio's conduct, (2) malicious prosecution against the Government for Special Agent Familio's conduct, (3) malicious prosecution against the Government for Bamba's conduct while a Government employee, (4) malicious prosecution against Bamba in his private capacity.

## II.     Legal Standards

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, "[a] claim may be properly dismissed for lack of subject matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it." *Kingsley v. BMW of N. Am. LLC*, 2012 WL 1605054, at *2 (S.D.N.Y. May 8, 2012).  In resolving a motion to dismiss under Rule 12(b)(1) based solely on a facial challenge to the sufficiency of a pleading, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243

(2d Cir. 2014). Nevertheless, the party asserting subject matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III. Discussion

First, the Government moves to substitute itself for Bamba as a defendant (dismissing Bamba with prejudice). Second, the Government moves to dismiss all claims for lack of subject matter jurisdiction under Rule 12(b)(1). Alternatively, the Government moves to dismiss the claims for failure to state a claim under Rule 12(b)(6). The Court addresses each motion in turn.

#### A.     Motion to Substitute

The FTCA grants plaintiffs a cause of action for "injury or loss of property, . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA is a limited waiver of sovereign immunity by the United States and "a claimant's *exclusive* remedy for

4

nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA." *Castro v. United* States, 34 F.3d 106, 110 (2d Cir. 1994) (emphasis added).

Under New York law,[1] five factors must be weighed to determine whether Bamba, when he filed a criminal information based on alleged falsehoods, was acting within the scope of his employment: (1) the connection [among] the time, place[,] and occasion for the act; (2) the history of the relationship between employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated. *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (N.Y. 1979).

The first and third factors of the *Riviello* test suggest that Bamba was acting within the scope of his employment when he filed his complaint. Bamba's criminal information detailed a confrontation that occurred during work hours, while Bamba was in his office, and revolved around a work responsibility. Therefore, a clear connection exists between the occasion of Bamba's act and his status as an employee of the Government. *See Tomscha v. Poole*, 2016 WL 7378974, at *8 (S.D.N.Y. December 20, 2016) (applying the *Riviello* test to a similar dispute and concluding that a clear connection existed). With respect to the third factor, although it is likely uncommon for DHS employees to file criminal complaints relating to workplace disputes, there is nothing uncommon about filing a criminal complaint when one is threatened with a weapon or believes he is being physically prevented from seeking help. In *Riviello* itself, the complained-of facts were highly uncommon: a waiter accidentally stabbed a patron in the eye with a knife he

---

[1] The law to be applied is that of the place where the United States employee's act or omission occurred. 28 U.S.C. § 1346(b)(1); *see also Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).

was showing the patron. Yet the *Riviello* court looked not at the precise occurrences that led to the complaint, but rather at whether those occurrences happened within the context of typical workplace operations. In the same way that in *Riviello* the waiter's common behavior of mingling and conversing with patrons provided the context for a freak accident, in this case Bamba's performing possibly contentious work in an office with armed personnel gave rise to the situation at issue. In laying down the applicable test, the *Riviello* court noted that whether an employee's action is common must be considered holistically, and "depends largely on the facts and circumstances peculiar to each case." *Riviello* 47 N.Y.2d at 302. Here, Bamba's act was a common one, given the situation in which he found himself.

The fourth and fifth factors of the *Riviello* test also point to Bamba's acting within the scope of his employment, although less unequivocally. To be sure, filing criminal complaints based on falsehoods (as Ward alleges Bamba did) is not the "normal method" of filing complaints. Additionally, it is not clear that the Government would have anticipated that Bamba would falsely claim to be threatened by another employee. Nevertheless, New York courts have taken an expansive view of the conduct that is normal, and that an employer could reasonably expect. Indeed, a variety of meanspirited, reckless, illegal acts by employees — such as assault and drunken destruction of property — have been deemed to be attributable to an employer. *See Smith v. Brown*, 296 F. Supp. 3d 648, 656–58 (S.D.N.Y. 2017) (collecting cases); *see also Catalina v. Herbst*, 916 F. Supp. 2d 266, 271 (E.D.N.Y 2013) (holding an employee was acting within the scope of her employment when she made defamatory statements about a supervisor); *Marley v. Ibelli*, 203 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) (holding two employees' "hostile, combative and threatening" campaign to get a third employee fired occurred within the scope of their employment). Given the broad variety of conduct that has been deemed normal and

foreseeable by employers under New York law, the Court concludes that Bamba acted as an employee under the fourth and fifth factors of the *Riviello* test.

Taking the facts in Ward's complaint as true, as the Court must at this stage, the second *Riviello* factor weighs in Ward's favor. Indeed, Jason Martinez's alleged statement to NYPD that Bamba "had a history of making false allegations against co-workers and supervisors" (Comp. ¶ 25) could indicate that Bamba often acted in ways motivated wholly by personal motives, not the interests of his employer. *See Adorno v. Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("an employer will not be held liable for actions which were not taken in furtherance of the employer's interests and which were undertaken by the employee for wholly personal motives") (quoting *Galvani v. Nassau Cty. Police Indemnification Review Bd.*, 674 N.Y.S.2d 690 (2d Dep't 1998); *cf. Smith* 296 F. Supp. 3d at 569 (noting that cases where employees were found acting for wholly personal motives typically have "involved sexual gratification"). Overall, however, the *Riviello* factors favor the Defendants' position.

Another fact buttresses the conclusion that Bamba was acting within the scope of his employment: his employer, the Government, certifies that he was. (*See* Dkt. No. 18 at 1 n.1.) Once such certification occurs, a plaintiff "bear[s] the burden of showing that the certification was improper," *Lipkin v. United States Sec. & Exch. Comm'n*, 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006), and of "alleging with particularity facts relevant to the scope of employment issue," *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 768 (S.D.N.Y. 2015) (internal quotations omitted). Ward does not succeed in rebutting the Government's certification. Ward speculates that "there was some personal reason for Mr. Bamba to become involved in the criminal case." (Dkt. No. 17 at 10.) This statement does not amount to alleging that the certification is improper with "particular facts." Furthermore, it does not follow that because

7

Bamba was a financial analyst, filing a criminal complaint could not fall within the scope of his employment. Rather, any action taken by a worker that was "in furtherance of his employer's interests" and "not taken for wholly personal motives" is attributable to the employer. *See Adorno*, 312 F. Supp. 2d at 516; *see also Asto v. Mirandona*, 372 F. Supp. 2d 702, 708 (E.D.N.Y. 2005) (holding, with respect to an employee not in a law-enforcement position, that "statements concerning [] perception of the likely culpability of suspects under investigation[,] even if the statements reflected an incorrect assessment of Plaintiff's involvement[,] would not place the statements outside the scope of [a defendant's] employment"). Stymying workplace violence is in Bamba's employer's interest and Ward suggests no personal motives Bamba may have had for his actions. Ward has failed to rebut the Government's certification.

Given that the *Riviello* factors weigh in favor of Bamba's actions being attributable to the Government, and that Ward does not overcome the Government's certification that Bamba was acting as an employee, the Government's motion to substitute itself for Bamba as a defendant is granted. The Government is substituted for Bamba as a defendant, and Court Four is dismissed with prejudice as to Bamba.

    **B.**    **Subject Matter Jurisdiction Over the Malicious Prosecution Claim Stemming from Bamba's Conduct**

The FTCA has several jurisdictional limitations, including that it "shall not apply to . . . any claim arising out of . . . malicious prosecution," except with respect to "acts or omission of investigative or law enforcement officers." 28 U.S.C. § 2680(a), 2680(h). Consequently, the Government argues that this Court lacks subject matter jurisdiction over Ward's claim of malicious prosecution by Bamba, since Bamba did not work as an investigative or law enforcement official. Ward counters that Bamba "was acting at the direction of DHS law enforcement officials when he filed the information" and therefore that, as an "instrumentality of

8

federal law enforcement officers," Bamba's conduct should be viewed as an act by a law enforcement officer.  (Dkt. No. 17 at 10.)

The FTCA section providing for liability in cases where a Government employee is an investigative or law-enforcement supplies a definition: "'investigative or law enforcement officer' means any officer of the United States who is *empowered by law* to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C § 2680(h) (emphasis added); *see also Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992).  The statute's plain language indicates that, even if Bamba acted on the instructions of DHS law enforcement officials, he cannot be liable for malicious prosecution because he is not empowered by law to perform any functions listed in the statute.  Furthermore, even if the statute's language were ambiguous (which it is not), any ambiguity would be "construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires."  *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (internal citations omitted).  Ward points to no cases in which law-enforcement status for the purposes of § 2680(h) has been found to transfer to an employee guided by law enforcement.

Second, even assuming that the law-enforcement exception could apply to an analyst like Bamba, there is no basis for a plausible inference that Bamba was acting as an instrumentality of law enforcement.  Ward's complaint "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quotations omitted).  Yet Ward's only argument in support of the allegations that DHS and Bamba coordinated is that "the United States neither admits nor denies this allegation" and that the Government has not submitted

9

affidavits showing the "true nature of Mr. Bamba's actions in this case." (Dkt. No. 17 at 10.) That is insufficient. Ward's third claim is dismissed.

### C. Subject Matter Jurisdiction Over Claims Stemming from Agent Familio's Actions

The FTCA does not cover claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Discretionary acts are those that (1) "involve an element of judgment or choice . . . [and] are not compelled by statute or regulation," and (2) are "grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2000) (applying tests laid out in *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991), and *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1991)). To benefit from the discretionary function exception, a defendant cannot have been acting "outside the scope of his delegated authority." *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975).

The Government contends that the Court lacks subject matter jurisdiction over Ward's claim that Agent Familio maliciously prosecuted and falsely arrested him because Familio's decision to file a criminal information meets the criteria of a discretionary action. First, Familio made his recommendation uncompelled by any statute. Second, Familio weighed "considerations of public policy" — namely, "the need to maximize compliance [with the relevant laws], and the efficient allocation of agency resources." *Berkovitz,* 486 U.S. at 538. The Government analogizes this case to *Huntress v. United States*, No. 18 Civ. 2974, 2019 WL 1434572 (S.D.N.Y. Mar. 29, 2019), *aff'd*, 810 Fed. Appx. 74 (2d Cir. 2020) (finding, based on the discretionary function exception, that the Court lacks jurisdiction over a developer's claims that the EPA maliciously procured indictments against him).

The Court's conclusions in *Huntress* apply here as well.  Like the EPA agents in *Huntress*, Agent Familio had to decide whether to recommend an enforcement action without any "federal statute, regulation, or policy that specifically prescribes" investigative protocols to follow.  *Huntress*, 2019 WL 1434572, at *4 (quoting *Berkovitz*, 486 U.S. at 536–37).  Also like the agents in *Huntress*, Familio had to make "policy judgements regarding the seriousness" of the allegations made by Bamba.  *Id.*  Ward fails to distinguish this case from *Huntress*.  Indeed, all the factual differences he cites — that Agent Familio investigated alone, that he was recommending state instead of federal penalties, that he procured no indictment, and that he did not employ an agency-internal process — have no bearing on the defining features of discretionary action under the *Gaubert*/*Berkovitz* test.  Nor does Ward point to any precedent holding the factual differences he proffers to be relevant.

In support of its position that an officer's decision to bring charges (or not) is covered by the discretionary function exception, the Government also cites several cases as persuasive authority.[2]  In each case a plaintiff claimed that law enforcement officers ignored possibly exculpatory evidence when deciding to make an arrest.  In each case, the court ruled that the poor quality of an investigation does not defeat the discretionary function exception.  *See Valdez*, 2009 WL 2365549, at *6; *Wang*, 2001 WL 1297793, at *4; *Awad*, 2018 WL 4109656 at *7; *Rourke,* 744 F. Supp at 103.  In this case, Agent Familio's discretion to bring charges is not

---

[2] These cases are *Valdez v. United States*, No. 08 Civ. 4424, 2009 WL 2365549 (S.D.N.Y. July 31, 2009); *Wang v. United States*, No. 01 Civ. 1326, 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001), *aff'd*, 61 F. App'x 757 (2d Cir. 2003); *Awad v. United States*, No. 15 Civ. 373, 2018 WL 4109656 (D.N.M. Aug. 29, 2018), *aff'd*, 807 F. App'x 876 (10th Cir. 2020); and *Rourke v. United States*, 744 F. Supp. 100 (E.D. Pa. 1988).

curtailed by the fact that Ward is right-handed while Bamba stated that Ward placed his hand on a gun at his left side.

Ward attempts to sidestep the Government's cases by distinguishing between challenges to how an investigation was conducted and his suit "over being arrested without probable cause." (Dkt. No. 17 at 7-8.)  The distinction is doubly unpersuasive.  First, factually: in each of the cases the Government cites, the plaintiff argued that he was investigated so poorly that legitimate cause for their arrest was lacking — this is the argument Ward makes as well.  Second, logically: Ward cannot argue that probable cause was lacking without arguing that Agent Familio's investigation was flawed (which is in effect a challenge to how the investigation was conducted).  Furthermore, the distinction Ward tries to draw is unsupported by the case law.  Indeed, in *Huntress* the Court held that "a judgment on *whether* and how to investigate is a quintessentially discretionary function."  *Huntress*, 2019 WL 1434572, at *4 (emphasis added).  Thus, Ward's claims fail even if he is arguing that he is not challenging Agent Familio's investigation because no investigation ever took place.

Ward is incorrect that holding the discretionary function exception to apply to Agent Familio's decision to file charges "would render the FTCA's intentional tort exception effectively nugatory."  (Dkt. No. 17 at 9.)  As noted, to the extent that Agent Familio acted outside the scope of his delegated authority, he could be liable for false arrest under the FTCA.  Here, it is undisputed that DHS delegated to Familio the authority to investigate the altercation between Bamba and Ward and to make a recommendation with respect to possible charges.  *Cf. Watson v. United States*, 179 F. Supp. 3d 251 (E.D.N.Y. 2016) (holding the discretionary function exception did not apply to ICE agents who arrested a U.S. citizen, since ICE has statutory authority only over aliens), *rev'd in part on other grounds*, 865 F.3d 123 (2d Cir. 2017)

(finding plaintiff's claim was time barred). To be sure, federal officials are permitted a wide ambit as long as they act within their clearly delegated authority, and absent specific statutory guidance. Yet the latitude on whom to charge that courts have accorded to officers is consistent with the principle that ambiguities in waivers of sovereign immunity should be construed in favor of immunity. *Cooper*, 566 U.S. at 290.

Agent Familio was performing a discretionary function when he decided to arrest and prosecute Ward. Ward's first and second claims are therefore dismissed. Because the Court holds it does not have jurisdiction over any of Ward's claims, it need not, and does not, reach the Government's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

### IV. Conclusion

For the foregoing reasons, the Government's motion to substitute itself as a defendant for Bamba and to dismiss all claims for lack of subject matter jurisdiction is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 13 and to close this case.

SO ORDERED.

Dated: August 30, 2021
       New York, New York

_____
J. PAUL OETKEN
United States District Judge